## A04A0047. CUMMINGS v. THE STATE.
(598 SE2d 116)

BLACKBURN, Presiding Judge.

Following his conviction for aggravated assault[1] and the denial, nearly six years after its filing of his motion for new trial, Reginald Cummings appeals, arguing that (1) the evidence was insufficient to support his conviction, and that the trial court erred in: (2) admitting

---

his statement into evidence; (3) denying his motion in limine; (4) denying his motion for mistrial; and (5) charging the jury on conspiracy. For the reasons set forth below, we affirm.

We note that it took far too long for the trial court to consider Cummings's motion for new trial. Cummings's motion for new trial was filed on September 19, 1997, yet it was not heard until July 22, 2003.

> The courts have a duty to the citizens of this state to oversee the criminal justice system and to ensure that those who are accused of crimes are tried expeditiously, and that their constitutional rights are protected. The delay which has occurred in this case is simply not acceptable. The legislature has provided that a defendant must file a motion for new trial within 30 days of the entry of the judgment on the verdict. This and other statutorily established time limits clearly indicate the intention of the legislature that criminal matters be resolved promptly. [Six] years is too long to take to address a motion that must be filed in thirty days. The judicial branch, prosecutors, and the criminal defense bar all have a duty to meet their respective responsibilities in ensuring that criminal cases are promptly resolved.

*Stone v. State.*[2]

1. In two enumerations of error, Cummings contends that the evidence was insufficient to support his conviction.

> The standard of review for the sufficiency of evidence, in reviewing either a motion for a directed verdict or a motion for new trial, is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We view the evidence in the light most favorable to the verdict, and defendants no longer enjoy the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[3] Conflicts in the testimony of the witnesses are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

*Sutton v. State.*[4]

---

[2] *Stone v. State*, 257 Ga. App. 306, 307 (570 SE2d 715) (2002).
[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[4] *Sutton v. State*, 261 Ga. App. 860 (1) (583 SE2d 897) (2003).

Viewed in this light, the evidence shows that in the early morning hours of December 5, 1996, Cummings, co-defendant Johnny Brown, and Brown's brother were drinking in front of the apartment of co-defendant John Millbrooks. Jermaine Burris, the victim, rode up to the men on his bicycle and asked if he could leave his bicycle with them. The men agreed, Burris left the bicycle and walked away, and the men sat down and continued drinking. The men were later joined by co-defendant Ernest Vaughns.

Not long thereafter, the men were approached by a man who had been seen several times in the neighborhood trying to buy drugs. The man asked if any of them had seen a man on a bicycle, and said that the man with the bicycle had robbed him. Vaughns conciliated the man, according to one witness, by reimbursing him the amount that had been taken from him, and according to Cummings by giving him drugs.

When Burris returned for his bicycle, Cummings, carrying an aluminum baseball bat, confronted him in front of the apartment and asked if he had robbed the man; Burris denied that he had done so. Cummings, however, continued to ask about the robbery and to accuse Burris of having the money. Finally, Burris, upset at Cummings's questions, took a swing at Cummings. Cummings ducked the swing and hit Burris in the head with the bat. Burris, stunned by the blow, ran across the street.

Kendra Beard, who lived in a nearby apartment, heard Cummings and Burris arguing and came to the screen door of the apartment to see what was going on. Beard testified that she heard Cummings say, "Get [him], [he] roasted me. Get [him], he got my money." Beard then saw Burris run across the street. At the same time, Vaughns came running out of his apartment, firing his pistol at Burris. Burris fell to the ground, and Cummings and Brown approached him. Cummings poked Burris in the back with the bat; Brown struck Burris. At that point, Burris got up and started running again. Brown gave chase and hit Burris with a tree branch; Burris once again fell to the ground, attempted to crawl away, and then collapsed. Cummings again hit Burris with the bat. He and Brown then returned to Millbrooks's apartment.

About half an hour later, Cummings and his co-defendants went back to check on Burris. When they realized that Burris was dead, they loaded Burris's body into Cummings's car, and Brown and

Millbrooks left to dispose of the body. The body was found on the side of the road later that morning by a delivery man. This evidence was sufficient under the standard of *Jackson v. Virginia* to convict Cummings of the crime of aggravated assault.

Cummings points out that he was indicted for felony murder in connection with the aggravated assault upon Burris by shooting him, but that the evidence at trial made clear that he never possessed a handgun and did not shoot Burris. He argues that he was indicted as a party to the crime under OCGA § 16-2-20, but there was no evidence that he either directly committed the crime or advised, encouraged, hired, or persuaded Vaughns to shoot Burris. Accordingly, he maintains, the evidence was insufficient to convict him.

> Mere presence and participation in the general transaction in which a homicide is committed is not conclusive evidence of consent and concurrence in the perpetration of the crime, unless such person participated in the felonious design of the person killing. However, it is not necessary that the crime of murder should be a part of the original design; but it is enough that it be one of the incidental and probable consequences of the execution of the design of the parties, and should appear at the moment to one of the participants to be expedient to the common purpose. In such case, the intent and act of the slayer is imputable to the other party, though he be merely present and he himself does not inflict the mortal wound. Where one is present at the time of the homicide, the question whether or not the defendant participated in the felonious design of the person killing is one to be determined by the jury from all the facts and circumstances of the case. A conspiracy may be shown by circumstantial evidence as well as by direct testimony.

(Citations omitted.) *McClung v. State.*[5]

In this case, the jury was authorized to find that: Cummings and co-defendant Vaughns were upset with Burris for robbing the man who had come to purchase drugs; Cummings, angry with Burris about the robbery, hit Burris with his bat; when Burris attempted to run, Cummings yelled for someone to "get" Burris because he had stolen his money, and, in response to Cummings's shouts, Vaughns ran from his apartment and shot the fleeing Burris; after Burris had been shot, Cummings poked his body with his bat, followed him, and hit him again after he had collapsed; and, Cummings and Vaughns

---

[5] *McClung v. State*, 206 Ga. 421, 424 (3) (57 SE2d 559) (1950).

helped load the body into Cummings's car so that it could be removed from the scene. This evidence

> showed concert of action between the defendant and his co-indictee; that their minds united and concurred in a common intent and purpose to commit an unlawful act; that each assisted the other in accomplishing a common design; and that an unlawful act was committed by them while they were thus acting together, aiding and abetting each other. By reasonable deductions from their acts and conduct, the jury was authorized to infer that the defendant and his co-indictee, as joint conspirators, corruptly agreed with each other to commit the unlawful act of which they were charged by the grand jury. And since an agreement between two or more persons to commit an unlawful act may be found from their acts and conduct alone, it is not necessary to show any prearrangement between them to thus commit such an act.

*Chappell v. State.*[6]

2. Cummings argues that the trial court erred in admitting his statement into evidence because the statement was not voluntary. He asserts that he gave the statement to the police only because he was promised that the State would drop its opposition to his securing bond in another unrelated murder case, and that it would not prosecute him in the present case. We find no merit to this argument.

We begin our analysis by noting that "[w]hen a trial judge holds a suppression hearing and determines the voluntariness of a confession, that determination will be upheld on appeal unless clearly erroneous." *Leigh v. State.*[7]

> For a confession to be admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or the most remote fear of injury. The promise of a benefit that will render a confession involuntary under OCGA § 24-3-50 must relate to the charge or sentence facing the suspect. The phrase "hope of benefit" generally means the reward of a lighter sentence.

(Footnotes omitted.) *Evans v. State.*[8]

Cummings's argument fails for at least two reasons. First, any hope of benefit Cummings may have had was not induced by another.

---

[6] *Chappell v. State*, 209 Ga. 701, 704 (1) (75 SE2d 417) (1953).

[7] *Leigh v. State*, 223 Ga. App. 726, 727 (1) (478 SE2d 905) (1996).

[8] *Evans v. State*, 248 Ga. App. 99, 101 (2) (545 SE2d 641) (2001).

The record shows that while Cummings was being held in jail without bond on another murder charge, he had his attorney communicate to the police that he knew about Burris's murder and would tell the police what he knew if the police would help him get out on bond on the murder charge for which he was incarcerated. When Cummings gave his statement to the police, it was as a result of his own efforts to seek a deal with the police, he did so with his attorney present, and he was the first to suggest the conditions under which he would give information to the police. Given these facts, it is clear that his "hope of benefit was not induced by another and would not serve to render his confession inadmissible." *Heard v. State.*[9]

Second, the record shows that, before Cummings gave his statement to the police, the investigator informed him, "Tell everything you know about it. Like I said, we just want the truth. And, like I said, nobody in this room has promised you anything; is that right? We've told you we can't make deals, all we do is tell the D. A. that you cooperated with us, and I believe that's what we've told your attorney. Is that all right?" Cummings affirmed this understanding. "[I]t is well established that a police officer is not offering a hope of benefit by telling a suspect that his cooperation and truthfulness will be made known to others." *Jackson v. State.*[10] Under these facts, the trial court's determination that Cummings gave his statement voluntarily to the police was not clearly erroneous.

3. Cummings next contends that the trial court erred in denying his motion in limine to prevent the State from arguing in closing that he and co-defendant Vaughns were involved in a drug deal that went bad. We note that the record does not contain a transcript of the State's closing argument. We therefore have no way of knowing what the content of the State's argument was, or whether Cummings made timely objection to that argument. Accordingly, in the absence of a transcript, we cannot consider this enumeration of error. *White v. State.*[11]

4. Cummings argues that the trial court erred in denying his motion for mistrial based on testimony by a witness for the State which, he alleges, was irrelevant and improperly placed his character in evidence. The testimony to which Cummings objects occurred during the State's direct examination of Investigator Bowen:

---

[9] *Heard v. State*, 165 Ga. App. 252, 253 (2) (300 SE2d 213) (1983).
[10] *Jackson v. State*, 262 Ga. App. 451, 453 (2) (585 SE2d 745) (2003).
[11] *White v. State*, 174 Ga. App. 531, 532 (2) (330 SE2d 760) (1985).

State: Okay. Did you ever speak to — let me back up. Do you know if Reginald Cummings was spoken to by members of the sheriff's department concerning this case?

Bowen: I believe he was.

State: Were you in on that conversation?

Bowen: No, I wasn't.

State: Okay. Subsequent to that interview, did you — were you given any information to help you in your investigation of this case?

Bowen: Yes, I was. A —

Court: Watch out, now. Be careful.

State: Well, your Honor —

Court: Be careful.

State: Yes, sir. What witnesses did you interview subsequent to Reginald Cummings's statement to the police?

Bowen: A special agent from the FBI had [given] us the name of Regiee, R-E-G-G-I —

Watkins [(co-defendant Vaughns's counsel)]: Your Honor, I'm going to object.

Court: Sustain the objection. Strike the reference. Don't pursue this line of examination. Move on. I already told you, now, hearsay evidence [is] absolutely objectionable. Strike it, don't give it any weight and credit. Eliminate that. That's not in the record and give it no weight and credit. I tried to warn you, tried to tell you, saw it coming, advised you not to do it, did it anyway. Don't do it again.

State: Yes, sir.

Sussman [(Cummings's counsel)]: Your Honor, I have a motion to make after — reserve my right to make a motion.

Court: You can reserve your right. We'll take up your motion outside the presence of the jury later.

The next time the jury was excused from the courtroom, the following exchange took place.

Court: Okay, who wants to move first? Mr. Sussman, do you want to move? You wanted to make a motion a few minutes ago and we said we would take it up at a later time. This is the time to make that motion and any others you'd like to make.

Sussman: Your Honor, I'm not going to make that particular motion. I think your curative instruction was sufficient regarding that small tidbit of hearsay about the FBI, so I'll withdraw that motion at this time.

It was on the next day that Cummings's counsel informed the trial court that he had been thinking about the testimony "all night and this morning" and now wanted to move for a mistrial on the ground that the testimony was irrelevant and placed Cummings's character in issue.

First, the record, as set forth above, shows that Cummings

> failed to object to the testimony at trial and did not join in the objection urged by counsel for one of his co-defendants. It is well established that appellate courts may not consider objections to evidence not raised at trial. If several parties are entitled to make an objection, and it is made by any number less than all, it does not inure to the advantage of the party or parties not joining in it. Thus, where a defendant does not expressly adopt the objection of a co-defendant, he thereby waives that objection and may not utilize it to gain review. In the instant case [Cummings] waived any objection by failing to adopt the objection made by [Vaughns's] counsel.

(Citations and punctuation omitted.) *Heard v. State.*[12]

Having failed to join in a timely objection to the investigator's testimony, Cummings's only remedy was to object to the trial court's curative instructions. This he did not do. On the contrary, Cummings acquiesced in those instructions, telling the court he found them to be sufficient. "No matter how erroneous a ruling of a trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal. He must stand his ground. Acquiescence deprives him of the right to complain further." (Punctuation omitted.) *Bixby v. State.*[13]

5. In his fifth enumeration of error, Cummings asserts that the trial court erred in charging the jury on conspiracy. Given our determination in Division 1 that there was evidence authorizing the jury to find that Cummings and Vaughns acted in concert to commit an unlawful act, it is clear that the trial court did not err in charging on conspiracy. *Stinson v. State*[14] ("[t]he evidence introduced at trial supported an inference of a conspiracy. The trial court did not err in charging on conspiracy").

*Judgment affirmed. Barnes and Mikell, JJ., concur.*

---

[12] *Heard v. State*, 204 Ga. App. 757, 759 (4) (420 SE2d 639) (1992).
[13] *Bixby v. State*, 254 Ga. App. 212 (1) (561 SE2d 870) (2002).
[14] *Stinson v. State*, 215 Ga. App. 12, 13-14 (2) (449 SE2d 544) (1994).

DECIDED APRIL 7, 2004.

*Ellis R. Garnett*, for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.