A07A0621. WILLIAMSON v. THE STATE.
A07A0633. MEADOWS v. THE STATE.
A07A0635. TURNER v. THE STATE.
(648 SE2d 118)

ELLINGTON, Judge.

Ralph Meadows, Kenny Williamson, and Marion Turner were tried jointly and convicted in connection with a Gwinnett County armed robbery. Specifically, the jury found the appellants guilty beyond a reasonable doubt as follows: Meadows of armed robbery, OCGA § 16-8-41; and possession of a firearm during the commission of a felony, OCGA § 16-11-106; and Williamson and Turner of the lesser included offense of robbery, OCGA § 16-8-40 (a).[1] Following the denial of their motions for a new trial, all three men appeal (Meadows in Case No. A07A0633, Williamson in Case No. A07A0621, and Turner in Case No. A07A0635), challenging, inter alia, the admission of certain evidence, the sufficiency of the evidence, certain jury instructions, and the effectiveness of counsel. Because the three men were tried together and enumerate related errors on appeal, we consolidate these cases for purposes of appeal. Finding no error, we affirm.

1. Meadows and Williamson contend the evidence was insufficient to sustain their convictions. On appeal from a criminal conviction, we

---

[23] Id.
[1] The trial court directed a verdict of acquittal as to charges based on a second armed robbery. The jury acquitted Williamson and Turner of possession of a firearm during the commission of a felony, OCGA § 16-11-106.

view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.

(Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004). The standard of *Jackson v. Virginia* is met if the evidence is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crime charged. *Clark v. State*, 275 Ga. 220, 221 (1) (564 SE2d 191) (2002).

Viewed in the light most favorable to the verdict, the record shows the following. On the evening of March 27, 2003, Brian Kemp spent the evening with Meadows and Turner, who were all acquainted from having been neighbors in Lithonia, and with Williamson, who lived in Gwinnett County.[2] The four men gathered at Kemp's house and left in Kemp's car, a gold Chevrolet Impala. Kemp saw Turner carrying a small, red souvenir baseball bat. Just before midnight, Kemp drove to a condominium complex in Gwinnett County and stopped the car when the others told him to stop. Meadows, Williamson, and Turner all got out of the car.

A woman who lived at the complex arrived home at the same time. As she drove into the parking lot, she noticed a gold four-door car facing her. As the woman walked from her car to her condominium, a man approached her from the same area where she had seen the gold car. The man told her not to say anything and pointed a black revolver at her, holding the gun in his left hand. The gunman was an African-American man, wearing baggy jeans, a blue sweatshirt with the hood partially covering his face, and something red on his clothing. Then, two other African-American men approached her, and one snatched her purse from her shoulder. The three men then ran away.

Two minutes after Meadows, Williamson, and Turner left Kemp's car, they returned to the car with a purse. They told Kemp to leave, and as he drove away Kemp could hear Meadows and Turner rummaging through the purse in the back seat. Minutes later, they

---

[2] Kemp pled guilty to two counts of robbery and testified at trial against these three appellants.

stopped at a nearby gas station. One of his three accomplices handed Kemp one of the victim's credit cards, which Kemp used to purchase gas.

Kemp then drove to another apartment complex and again stopped, as instructed. Meadows, Williamson, and Turner again got out of the car; this time Turner carried the red souvenir baseball bat. The three men returned to the car within two minutes, carrying a wallet and cell phone. A man who lived at that complex called the police and reported that he had been robbed by three men who left in a gold car driven by a fourth man, that one of the robbers carried a red baseball bat, and that one had a large bandage on his hand.

At approximately 1:40 a.m., a police officer who had received this lookout stopped Kemp's car not far from the scene of the robberies. Kemp was driving, and Meadows, Williamson, and Turner were passengers. Meadows was wearing baggy jeans with red boxer shorts protruding over the waistband, and he had a cast on his right hand. Inside Kemp's car, officers found a black revolver, a red souvenir baseball bat, the female victim's driver's license and credit cards, and the male victim's wallet and cell phone. The gun was found near the seat where Meadows had been sitting. At trial, Kemp identified the gun as one he had seen in Meadows' possession before the night of the robberies.

At the close of the State's evidence, the trial court granted the appellants' motion for a directed verdict of acquittal as to the indicted charge of armed robbery based on the second incident, the one against the male victim. The jury found the appellants guilty beyond a reasonable doubt on the charges arising from the first incident, against the female victim, as detailed earlier.

Under Georgia law, the testimony of an accomplice, standing alone, is insufficient to convict an accused. See OCGA § 24-4-8 ("in . . . felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient"). Only "slight evidence of corroboration connecting a defendant with the crime" is required, and "[t]he necessary corroboration may consist entirely of circumstantial evidence." (Punctuation and footnote omitted.) *Wilbanks v. State*, 251 Ga. App. 248, 259-260 (8) (554 SE2d 248) (2001). Finally, "the sufficiency of the corroboration evidence is peculiarly a matter for the jury to determine." (Punctuation and footnote omitted.) Id. at 259 (8). As seen from the facts recounted above, Meadows' and Williamson's arguments fail because the evidence identifying Meadows as the gunman and Williamson as a party to the armed robbery of the female victim was not limited to the uncorroborated testimony of the driver of the getaway car. The evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Meadows was the gunman in the armed robbery and that Williamson was a party to that offense,

warranting his conviction of the lesser included offense of robbery. *Finley v. State*, 252 Ga. App. 66, 68 (2) (555 SE2d 523) (2001); *Arnold v. State*, 243 Ga. App. 118, 121 (1) (532 SE2d 458) (2000).

2. Meadows, Williamson, and Turner contend the trial court abused its discretion in admitting two documents which purported to be letters Turner wrote to Kemp while the four men were in jail awaiting trial.

While awaiting trial, Kemp received two letters signed "Marion," which is Turner's first name. The first letter was directed to "Polo," which is Kemp's nickname, and discussed how the author and the recipient "can get out of this one." It said, "We went to buy some weed[;] all you know is somehow a robbery went down. And me I wasnt even in Gwinnett when that lady got robbed[;] I was over my cousins house." The other was directed to "Polo/Brian," addressed the recipient as "Brian" and said:

> We can beat this. . . . Ride wit me. . . . Somebody got to fall but it aint gotta be us. . . . Them DA are gonna try to make us all go against each other. This is what I wanna do. . . . Me and you need to ride together[;] if we both saying the same story them folks are going to believe us. . . . If me you and our lawyers have a talk with the DA and our stories are matching we might can get them to at least drop the charge to robbery and get something like 5 do 2 years. It is better than 10 yrs to life.

The letter proposed a "story" that the recipient, "Ralph" (Meadows' first name), and "Kenny" (Williamson's first name) picked the author up at his cousin's house at midnight and tried to buy marijuana from a Hispanic man[3] when "Ralph" robbed the man. As for the first robbery, the author suggested that the recipient should say he had picked up the others after the robbery and they gave him a stolen credit card to use and added, "At least say you picked me up from my cousins at 12:30." Kemp interpreted these letters as Turner's request that Kemp tell the same story that Turner planned to tell.

On the issue of authentication, the trial court was authorized to find that Turner wrote the letters based on the wealth of detailed references to the crimes charged, showing a first-hand knowledge of the events, together with the signature being Turner's first name and letter referring to his co-defendants' first names and nicknames. *Arevalo v. State*, 275 Ga. 392, 395 (5) (567 SE2d 303) (2002) (a letter the defendant received in jail was sufficiently authenticated by

---

[3] The victim of the second robbery was a Hispanic man.

circumstantial evidence as having been authored by the defendant's brother and co-conspirator where the letter was addressed to "my brother," referred to other participants by nicknames the defendant also used, and contained "detailed references to the crimes indicative of first-hand knowledge of how they were committed"); *Armstrong v. State*, 249 Ga. App. 772, 775 (3) (549 SE2d 545) (2001) (notes defendant received in jail were sufficiently authenticated by circumstantial evidence as having been authored by a co-defendant where notes threatened the recipient if he "snitched" and his co-defendant was the only person against whom the defendant had agreed to testify).

The letters having been authenticated, the trial court properly determined that the letters were admissible under the exception to the rule against hearsay evidence that statements made by a co-conspirator during the concealment phase of the conspiracy are admissible against all other co-conspirators. *Neason v. State*, 277 Ga. 789, 791 (2) (596 SE2d 120) (2004); *Womack v. State*, 273 Ga. App. 300, 303-304 (2) (a) (614 SE2d 909) (2005). See OCGA § 24-3-5 ("After the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all.").

3. In a related argument, Meadows contends the trial court erred in denying his motion to sever his trial from that of his co-defendants after the court admitted the two letters purportedly authored by Turner. But, as Meadows concedes, his trial counsel "failed to insist upon a ruling on his motion to sever and allowed the trial court to just ignore his motion." Because Meadows failed to obtain a ruling on this issue before the verdict, any purported error was waived and this argument presents no basis for reversal. *Terrell v. State*, 268 Ga. App. 173, 176 (4) (601 SE2d 500) (2004).

4. Meadows contends that the State adduced no evidence of a conspiracy to commit armed robbery and, therefore, that the trial court erred in instructing the jury on the law relating to conspiracy.

> It is not error to charge on the subject of conspiracy when the evidence tends to show a conspiracy, even if a conspiracy is not alleged in the indictment. The State may prove a conspiracy by showing that two or more persons tacitly came to a mutual understanding to pursue a criminal objective. And the conspiracy may be inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances.

(Citations and punctuation omitted.) *Edge v. State*, 275 Ga. 311, 313 (6) (567 SE2d 1) (2002). The evidence in this case showed that these

three appellants came to a mutual understanding to commit at least one armed robbery and, therefore, authorized the charge on conspiracy. *Boone v. State*, 250 Ga. App. 133, 141 (14) (b) (549 SE2d 713) (2001); *Powell v. State*, 210 Ga. App. 409, 412 (3) (437 SE2d 598) (1993).

5. Meadows contends the prosecutor deprived him of a fair trial by commenting on his silence, by vouching for certain witnesses' credibility, and by commenting on his personal opinion of Meadows' guilt. In addition, Meadows contends that the red souvenir baseball bat was relevant only to the alleged second armed robbery, that of the male victim, and, therefore, that the trial court erred in allowing the bat to go out with the jury, after directing a verdict of acquittal on that count of the indictment. Because Meadows failed to object to any of these alleged errors, he waived them for purposes of appellate review. Conceding this, Meadows contends that his trial counsel's assistance was ineffective, based on these failures to object at trial.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)[.] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [As the appellate court, we] accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003). As we have held, "[f]ailure to make a meritless objection cannot be evidence of ineffective assistance." (Citations and punctuation omitted.) *Hartley v. State*, 283 Ga. App. 388, 393 (2) (c) (641 SE2d 607) (2007).

(a) We have examined each of the allegedly objectionable remarks made by the prosecutor in context. We conclude that under Georgia law the prosecutor's statements that "there is no evidence offering any other version of what happened" and "the state's evidence is uncontradicted" are not comments on Meadows' post-arrest silence. *Johnson v. State*, 271 Ga. 375, 383 (15) (a) (519 SE2d 221) (1999) (a prosecutor's argument that evidence of guilt has not been contradicted or rebutted is permissible and is not a comment on the

defendant's silence); *Duffy v. State*, 271 Ga. App. 668, 670 (1) (610 SE2d 620) (2005) (accord). As a result, an objection would have lacked merit.

Furthermore, taken in context, the prosecutor's remarks[4] during closing argument which responded to defense arguments attacking Kemp's credibility did not rise to the level of the prosecutor personally vouching for Kemp's credibility in the way which our appellate courts have found objectionable.[5] *Johnson v. State*, 271 Ga. at 384 (15) (State's argument that "no witnesses lied" was not improper). While it is improper for counsel to state his or her personal belief as to the veracity of a witness, it is not improper to urge the jury to deduce from the evidence that a particular witness is, or is not, credible. *Shirley v. State*, 245 Ga. 616, 617 (1) (266 SE2d 218) (1980). Again, Meadows' defense counsel was not ineffective for failing to object.

Finally, Meadows has not identified any specific statements of the prosecutor which even arguably commented on the prosecutor's personal opinion of Meadows' guilt.[6]

Because none of the prosecutor's remarks were objectionable in the way Meadows argues on appeal, Meadows' argument fails. *Hartley v. State*, 283 Ga. App. at 393 (2) (c).

(b) With regard to the red souvenir baseball bat, we do not accept Meadows' position that the bat was not relevant to the case after the trial court directed a verdict on the charge of armed robbery of the male victim. Although there was no evidence that any of the perpetrators used the bat during the offense which was submitted to the jury, that is, the robbery of the female victim, there was evidence that Turner took the bat when the four men left Kemp's house on their way to commit that offense. Accordingly, the bat remained relevant to show that Turner intentionally participated in the robbery of the female victim and was not merely present in the car at the time of the traffic stop, as he argued. *Cummings v. State*, 266 Ga. App. 799, 802-803 (1) (598 SE2d 116) (2004). Sending all properly admitted real

---

[4] The prosecutor said "I suggest to you that [Kemp] is by and large telling the truth" and "I suggest to you that he is credible, he is believable. And you can take what he said and link it up with what everybody else said, as you consider the evidence in this case."

[5] See, e.g., *Bolden v. State*, 272 Ga. 1 (525 SE2d 690) (2000) (reversing conviction where trial court overruled defense objection to the prosecutor's statement, "[y]ou look at what you heard from the officer, who I thought was very credible"); *Alexander v. State*, 263 Ga. 474, 477 (2) (d), n. 8 (435 SE2d 187) (1993) (prosecutor's statements "I thought [the witness] was extremely credible, and I thought you did, too"; "I'll tell you it's true. I loved finding him"; and "[the witness] told you the truth. . . . He was completely worthy of belief" were improper, though error was harmless).

[6] See *Broznack v. State*, 109 Ga. 514, 516 (3) (35 SE 123) (1900) (reversing conviction where prosecutor argued, "I would not appear in this case, if I did not believe the defendant to be as guilty as any man that was ever tried in the courthouse" because it is improper for a prosecutor to urge his personal belief as to the defendant's guilt).

evidence to the jury room is standard practice and is not objectionable. See Jack Goger, Daniel's Georgia Criminal Trial Practice, § 24-18 (2007 ed.). Again, counsel's failure to make a futile objection was not ineffective assistance.

*Judgments affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED JUNE 11, 2007.

*Robert Greenwald*, for appellant (case no. A07A0621).

*Andrews, Merritt, Reilly & Smith, Raymon D. Burns*, for appellant (case no. A07A0633).

*John R. Burdges*, for appellant (case no. A07A0635).

*Daniel J. Porter, District Attorney, William C. Akins, Assistant District Attorney*, for appellee.