A11A0781. EDWARDS v. THE STATE.
(717 SE2d 722)

MILLER, Presiding Judge.

Following a jury trial, Norris Edwards was convicted of two counts of armed robbery (OCGA § 16-8-41 (a)) and two counts of possession of a firearm during the commission of a crime (OCGA § 16-11-106 (b)). Edwards filed a motion for new trial, which the trial court denied. On appeal, Edwards contends that the trial court erred in (i) failing to reconstitute the jury panel to ensure the random nature of the panel; (ii) admitting testimony regarding statements made by his co-defendant; (iii) admitting his "apology letter" to the

victims into evidence; and (iv) charging the jury as to the law of conspiracy. We discern no error and affirm.

> On appeal, this Court views the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

(Citation and punctuation omitted.) *Watson v. State*, 308 Ga. App. 871 (708 SE2d 703) (2011).

So viewed, the trial evidence shows that on August 17, 2008, Edwards and his co-defendants, Philip Wyatt and Daniel Gines, met at the residence of their mutual friend, Antavius Barnes. While at the residence, Barnes heard Edwards and Wyatt discussing plans to "hit a lick," meaning to commit a robbery. Later that evening, Barnes drove Edwards, Wyatt, and Gines to the Tara Apartment complex.

After arriving at the apartment complex, Edwards, Wyatt, and Gines approached a parked vehicle that was occupied by the female victim, her infant child, and her boyfriend. Edwards pointed a gun at the victims and demanded them "to give it up." The female victim gave the men her cell phone, purse, and wallet, which contained her debit card. The male victim gave the men his cell phone and wallet, which contained his student identification card, bank card, social security card, and cash. After the robbers departed from the scene, the victims went inside the male victim's apartment and called the police.

Later that evening, officers with the Athens-Clarke County Police Department received a report that four men in a green Honda vehicle with a flat tire[1] had tried to use the female victim's stolen debit card at a fast food restaurant. The individual making the report further informed the officers as to the direction where the vehicle traveled after leaving the restaurant. The officers responded to the area and located the suspect vehicle parked at a nearby duplex. As one of the responding officers approached the duplex, he heard the occupants engaged in a "very loud, very heated argument" about using the stolen debit card at the restaurant.

The officers surrounded the perimeter of the duplex. Thereafter,

---

[1] Barnes testified that he was the owner of the green Honda vehicle.

Edwards, Wyatt, Gines, and Barnes exited the duplex, and they were arrested.

Following his arrest, Edwards was advised of his constitutional rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). Edwards agreed to participate in a custodial interview with the investigating officer. During the interview, Edwards confessed to committing the armed robbery of the victims, admitted that he possessed the gun during the robbery, and informed the investigating officer that he had hidden the gun in a trash can at the duplex. Edwards also wrote a statement and an apology letter to the victims expressing his remorse for his crimes.

The officers obtained a warrant to search the duplex and the vehicle. During the ensuing search of the vehicle, the officers recovered a receipt, reflecting that the female victim's debit card had been used to make a purchase. During the search of the duplex, the officers recovered the bandana, pants, hat, and ski mask identified as the items worn by the robbers. The officers also recovered the male victim's student identification card from the pocket of the pants. In addition, the officers discovered the gun in the trash can, where Edwards said that he had hidden it.

Edwards, Wyatt, and Gines were jointly charged with several offenses related to the armed robbery incident. Following a separate jury trial, Edwards was found guilty of the charged offenses.

1. Edwards contends that he is entitled to a reversal of his conviction since the trial court erred in denying his request to reconstitute the jury panel to ensure the random nature of the panel. We disagree.

At trial, Edwards objected to the trial court's practice of placing deferred jurors at the top of the jury list. Edwards nevertheless acknowledged that the deferred jurors had previously been randomly selected, and he agreed with the trial court's finding that the jurors had been deferred regardless of their race or gender. Edwards further confirmed that he was not challenging the array of the panel. The trial court overruled Edwards's objection.

This issue has previously been decided adversely to Edwards's claim of error in *Morgan v. State*, 271 Ga. 885, 886 (2) (525 SE2d 691) (2000). The decision in *Morgan* held that the trial court's practice of placing jurors who had been excused during the previous term of court at the top of the jury list did not affect the randomness of the jury panel. Id. The trial court was authorized to find that there was no purposeful or systemic discrimination, because the jurors were deferred for various reasons unrelated to their race or gender and it was entirely random as to which jurors were going to be deferred

from one week to a different week.[2] See *Singleton v. State*, 229 Ga. App. 135, 136 (1) (493 SE2d 556) (1997) (ruling that practice of putting late jurors at end of jury list did not affect randomness of jury panel since it was entirely random as to which jurors would arrive late on a given day). As such, no error has been shown.

2. Edwards further argues that the trial court erred in admitting testimony as to statements made by his co-defendant, Wyatt. In this regard, Edwards complains that state's witness, Antavius Barnes, was allowed to testify that he heard Wyatt and Edwards discussing plans to "hit a lick," meaning to commit a robbery, and that Wyatt had told him details about their commission of the crimes after they returned from the Tara Apartment complex.

As an initial matter, Edwards failed to interpose a contemporaneous objection when the challenged testimony regarding the plans to "hit a lick" was presented at trial. Consequently, his objection to the testimony was waived. See *Howard v. State*, 279 Ga. 166, 168 (2) (611 SE2d 3) (2005) ("In the absence of a contemporaneous objection, defendants have waived the opportunity to raise this issue on appeal.") (citations omitted); *Henderson v. State*, 300 Ga. App. 478, 482 (2) (685 SE2d 454) (2009) ("Under the contemporaneous objection rule, one must object to evidence when it is actually offered, and the failure to object waives any objection which might have been raised.") (citation and punctuation omitted).

The challenged testimony was otherwise admissible under the conspiracy exception under OCGA § 24-3-5, which provides that "[a]fter the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." See *Ramsey v. State*, 165 Ga. App. 854, 857-858 (4) (303 SE2d 32) (1983). "The pendency of the criminal project" includes the accomplishment of the crime itself, as well as subsequent acts and declarations made during the concealment phase. (Punctuation omitted.) *Crowder v. State*, 237 Ga. 141, 152 (227 SE2d 230) (1976).

> The State may prove a conspiracy by showing that two or more persons tacitly came to a mutual understanding to pursue a criminal objective. And the conspiracy may be

---

[2] We note that at the motion for new trial hearing, Edwards presented testimony from a statistics expert in support of his claim. The trial court, however, was not required to reach a different conclusion based upon the expert testimony. Significantly, the expert agreed that juror deferments made for random reasons would not affect the randomness of the jury panel. Moreover, the expert conceded that he did not have any details regarding the dates, reasons, and jury pools pertaining to the jury deferments that would indicate that the deferments were not random.

inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances.

(Citation omitted.) *Williamson v. State*, 285 Ga. App. 779, 783 (4) (648 SE2d 118) (2007). Here, the trial evidence, including Edwards's written confession, showed that Edwards and his co-defendants, Wyatt and Gines, came to a mutual understanding to commit the armed robberies. Accordingly, the evidence established the existence of a conspiracy. See id.

Upon establishing a conspiracy, the "[v]oluntary, non-custodial, incriminating statements of defendants are admissible through the testimony of any one who heard the statements." (Citations and punctuation omitted.) *Ramsey*, supra, 165 Ga. App. at 858 (4). Since Barnes heard the co-conspirators' incriminating statements about the crimes during the pendency of the conspiracy, he could testify as to what they said. See id. See also *Brooks v. State*, 281 Ga. 14, 15-17 (2) (635 SE2d 723) (2006) (ruling that hearsay statements made by a conspirator to third parties during the course of a conspiracy, including the concealment phase, were admissible against all of the conspirators).

More importantly, Edwards's own admissions and confessions introduced in evidence showed that he had committed the armed robberies and provided the details regarding his participation in the crimes. There also was evidence that corroborated Edwards's admissions and confessions. Under these circumstances, no reversible error in the admission of Barnes's testimony has been shown. See *Morgan v. State*, 231 Ga. 280, 281 (4) (201 SE2d 468) (1973).

3. Next, Edwards contends that the trial court erred in admitting his "apology letter" to the victims into evidence. Again, we discern no error.

Following a hearing conducted pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), the trial court determined that Edwards's confession and apology letter to the victims had been voluntarily given, without hope of benefit or fear of injury. The investigating officer testified that he informed Edwards of his *Miranda* rights and that Edwards signed a written waiver form that acknowledged his rights, expressed his willingness to answer questions and give a statement without the presence of a lawyer, and reflected that no promises or threats had been made to induce his cooperation. The investigating officer further testified that Edwards did not appear to be intoxicated, appeared to understand his questions, and never revoked the waiver of his rights. The investigating officer promised to advise the district attorney that Edwards had been honest, but never made any promises to get Edwards a reduced

charge or sentence. After Edwards responded to the oral questioning, the investigating officer asked Edwards to write the apology letter, which was an investigative tool to obtain more facts and details about the crimes. Edwards agreed to give both a written statement and an apology letter to the victims, which admitted his participation in the crimes.

Edwards contends that his apology letter was improperly admitted at trial since it allegedly was obtained by the investigating officer's "trickery." "To make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." OCGA § 24-3-50.

> The use of trickery and deceit to obtain a confession does not render the confession inadmissible, as long as the means employed are not calculated to procure an untrue statement. And, absent any evidence that the police investigative techniques were designed to induce the slightest hope of benefit or fear of injury, the resulting statements are not rendered involuntary and inadmissible. A trial court's findings as to factual determinations and credibility relating to the admissibility of a defendant's statement will be upheld on appeal unless clearly erroneous.

(Punctuation and footnotes omitted.) *Wright v. State*, 279 Ga. App. 155, 157 (2) (630 SE2d 656) (2006). Here, the trial court was authorized to find that the investigative officer's techniques were not impermissible and did not render the apology letter involuntary. "[A]n investigator does not make an offer of hope of benefit upon telling a defendant that his or her cooperation will be made known to the prosecution, or by offering help to the defendant." (Citations and punctuation omitted.) *Davis v. State*, 245 Ga. App. 508, 509 (538 SE2d 159) (2000). The "slightest hope of benefit" under OCGA § 24-3-50 means the hope of a lighter sentence. *Cooper v. State*, 256 Ga. 234, 235 (2) (347 SE2d 553) (1986). The investigating officer stated that he did not promise Edwards a reduced charge or sentence in exchange for his cooperation. Moreover, the investigating officer testified that Edwards had already made a confession before he agreed to write the apology letter. Accordingly, it cannot be said that the investigating officer's request for an apology letter induced Edwards's confession. See *State v. Lee*, 295 Ga. App. 49, 51 (2) (670 SE2d 879) (2008) (noting that since the officer's alleged misconduct occurred after defendant had already confessed to the crime, it could not be said that the misconduct induced the confession). Based upon the evidence presented, the trial court's decision admitting Edwards's apology letter was not erroneous. See *Evans v. State*, 248

Ga. App. 99, 101-102 (2) (545 SE2d 641) (2001).

4. Lastly, Edwards asserts that the trial court erred in charging the jury as to the law of conspiracy. His contention is without merit.

"It is not error to charge on the subject of conspiracy when the evidence tends to show a conspiracy, even if a conspiracy is not alleged in the indictment." (Citation omitted.) *Williamson*, supra, 285 Ga. App. at 783 (4). As stated in Division 2 above, the trial evidence showed that Edwards and his co-defendants conspired to commit the armed robberies. Consequently, the charge on conspiracy was authorized. Id. at 783-784 (4).

*Judgment affirmed. Ellington, C. J., and Doyle, J., concur.*

DECIDED OCTOBER 19, 2011 — 

*Benjamin A. Pearlman*, for appellant.
*Kenneth W. Mauldin, District Attorney, Raquel C. Stokes, Assistant District Attorney*, for appellee.