**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 10, 2015**

# In the Court of Appeals of Georgia

A14A2349. EASON v. THE STATE.

McMILLIAN, Judge.

Kenneth Andre Eason was found guilty by a jury of armed robbery, and the trial court sentenced him as a recidivist to life in prison. See OCGA § 17-10-7 (a). He appeals following the denial of his motion for new trial, as amended, arguing his trial counsel was ineffective, the trial court should have given him more time to prepare for trial, his in-custody statement was improperly admitted, and the trial court improperly restricted his right to individually question prospective jurors. We affirm for the reasons set forth below.

Construed to support the jury's verdict,[1] the evidence at trial shows that on October 28, 2012, Charles Anderson went to an apartment complex located on Six

---

[1] *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Flags Drive in Cobb County to ask his relative Willie Plummer if he could borrow Plummer's car. Plummer agreed, and Anderson left in the car with Dashon Hicks,[2] ostensibly to look for day work. Instead, Anderson and Hicks drove to Fayetteville, where they picked up Shantel Washington, whom Hicks identified as his cousin, and her boyfriend, defendant Kenneth Eason.

According to Hicks, Anderson then drove to his residence on Marietta Street in Atlanta, where he went inside and changed clothes while the others waited in the car. When Anderson emerged, he had on a hoodie sweater and was carrying a black or dark blue bag. Anderson got back in the car, and Washington, who had taken over the driving, drove back to Six Flags Drive and parked about a quarter mile down from a Waffle House located there. Eason, who was wearing a black shirt, then took a black ski mask out of the bag and put it on, and Anderson zipped up his hoodie sweater, which had some sort of "eye holes" in it, so that it covered his face.

Hicks testified that Anderson and Eason exited the car and ran toward the Waffle House, while he and Washington waited in the car. According to witnesses inside the Waffle House, two men dressed in black with their faces covered up

---

[2] Hicks was 22 years old at the time of trial. Plummer is his grandfather and Anderson is his uncle.

entered the restaurant at about lunchtime on October 28, 2012, and the taller and heavier of the two men stayed near the entrance of the restaurant and kept people from leaving while the shorter and slighter man ran inside the restaurant with a gun.[3] Anderson walked toward the register, which was open because a waitress was checking out a customer, and brandishing a gun, demanded the money from the register. Another waitress, who was also nearby, remarked to Anderson to get the money himself, and Anderson jumped or climbed across a booth where customers were sitting, reached inside the register, and took the money out with one hand while pointing the gun at the waitress with the other hand.

Eason and Anderson ran out of the Waffle House and back toward the car where Washington and Hicks were waiting. A witness, who was driving along Six Flags Drive, saw two men who were wearing masks run down the street and jump into a slowly moving car. She arrived at the Waffle House moments later, and when she realized there had been a robbery, she made a U-turn and started following the car. She instructed her daughter, who was in the car, to call police and was able to get close enough to the other vehicle to give police the tag number. She then returned to

---

[3] Anderson was described as substantially shorter and thinner than Eason.

3

the Waffle House where she talked with police and also gave them the tag number and a description of the vehicle.

Hicks testified that after they left the vicinity of the Waffle House, Washington drove back to Anderson's apartment, and after sitting around for awhile, Anderson decided to move Plummer's car and report it stolen. However, at some point Hicks and Plummer went to pick up the car and drive it back to Plummer's apartment complex. By that time, police had identified Plummer as the owner of the car, and they arrived at the apartment complex about the same time Hicks and Plummer returned with the car. Police surrounded the car, and Hicks subsequently identified the other participants in the robbery.

Eason was arrested and, after receiving his *Miranda* warnings, gave a statement to the lead detective in the case, Detective David Thorp, of the Cobb County Police Department's Crimes Against Persons Unit. The trial court found Eason's statement admissible following a *Jackson-Denno* hearing,[4] and Thorp testified about Eason's statement at trial.[5] According to Thorp, Eason told him that Washington and he were

---

[4] *Jackson v. Denno*, 378 U.S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

[5]Although the statement was recorded, it was not introduced into evidence at trial because the sound quality was poor and Eason's numerous references to having been in prison could not be redacted.

on their way to do laundry, but instead they got in the car with Anderson, who mentioned "hitting a lick." They then went to Anderson's apartment, where he picked up a bag containing a gun and a mask. Eason told Thorp he put on a mask, which matched the description Thorp was given by witnesses, and Eason admitted to seeing a gun, although he said he could not describe the gun because he was not familiar with firearms.[6] Thorp also said that Eason told him that after the robbery they went back to Anderson's apartment, and Anderson came up with the idea to attempt to cover their tracks by reporting the car they used in the robbery as stolen. He also told Thorp that Anderson gave him $200 as his share of the proceeds from the robbery.

Additional evidence will be set forth as necessary to address Eason's specific contentions on appeal.

1. Eason first argues that the trial court erred by not continuing the trial to allow him an opportunity to "adequately" communicate with his trial counsel and to properly prepare his defense at trial. Eason acknowledges he did not specifically request a continuance, but argues the trial court should have understood he was making such a request when he informed the court that he needed more time to confer

---

[6] Neither the face coverings worn by the men nor the gun used in the robbery were ever located.

5

with his trial attorney about his defense, and when he asked the court to appoint him new counsel because his current trial counsel did not know how he was going to defend him at trial. However, as we have repeatedly held, by failing to move for a continuance, Eason has waived his right to assert this error on appeal. *Simmons v. State*, 291 Ga. 664, 667 (4) (732 SE2d 65) (2012); *Watts v. State*, 265 Ga. 888, 888 (2) (463 SE2d 696) (1995); *Sheppard v. State*, 297 Ga. App. 806, 812 (2) (678 SE2d 509) (2009).

Moreover, even assuming that the trial court treated Eason's statements as a request for a continuance and implicitly denied his request, Eason has failed to show that he is entitled to reversal of this decision. Whether to allow a party additional time to prepare for trial is addressed to the sound discretion of the trial court, and we will not reverse the trial court's refusal to order a continuance absent a clear showing of abuse of that discretion. *White v. State*, 304 Ga. App. 158, 159 (2) (695 SE2d 425) (2010); *Miller v. State*, 303 Ga. App. 422, 423 (693 SE2d 637) (2010); *McIntyre v. State*, 302 Ga. App. 778, 780-781 (2) (691 SE2d 663) (2010); *Anthony v. State*, 276 Ga. App. 107, 108-109 (2) (622 SE2d 450) (2005). We find no such abuse here. Eason's trial attorney, Ronnie Knighton, informed the trial court that despite Eason's request for more time to prepare, he was ready to go to trial. The facts surrounding

6

the charges against Eason were neither complex nor convoluted, and the evidence was entirely testimonial in nature, the substance of which was contained in the witnesses' statements Eason's trial counsel obtained during reciprocal discovery. Additionally, on appeal, Eason has not pointed to any specific defense or evidence that might have been raised if he and his counsel had been given more time to prepare his defense. *Miller*, 303 Ga. App. at 424 ("To show harm [the accused] was required to specifically identify what other evidence or witnesses he would have put forth in his defense if his counsel had been given more time to prepare; speculation and conjecture are not enough.") (citation and punctuation omitted). And although Eason testified at the motion for new trial hearing that he needed the extra time to confer with his attorney about certain evidentiary matters, he admitted that he did not apprise his attorney of these alleged points of defense when he and his counsel were given the opportunity to meet before trial. Under these circumstances, Eason has failed to show error entitling him to a new trial. Id.

2. Eason also argues that the trial court erred by allowing Detective Thorp to testify concerning his in-custody statement because it should have been clear to the Detective that Eason was holding out some hope of benefit when Eason stated during the interview "I need your help." Detective Thorp testified at the *Jackson-Denno*

hearing that he responded to this statement by explaining that he was not in a position to offer him any sort of deal, and that all he wanted was for Eason to tell him the truth. He also told Eason that whether he cooperated or not, he would pass along whatever information he obtained from Eason during the interview to the district attorney's office or the trial court.

"To make a confession admissible, it shall have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." OCGA § 24-8-824.[7] Generally, the promise of a benefit that renders a confession involuntary under this code section means a reduced charge or sentence. *Rivers v. State*, ___ Ga. ___ (3) (Case No. S14A1411, decided January 20, 2015); *Johnson v. State*, 295 Ga. 421, 422 (2) (761 SE2d 13) 92014); *Vergara v. State*, 283 Ga. 175, 181 (1) (657 SE2d 863) (2008); *Preston v. State*, 282 Ga. 210, 211 (2) (647 SE2d 260) (2007); *Edwards v. State*, 312 Ga. App. 141, 145 (3) (717 SE2d 722) (2011). Clearly, an investigator does not make an offer of hope of benefit simply by telling a defendant that he will make the prosecutor aware of his or her cooperation. *Edwards*, 312 Ga. App. at 146 (3). And the fact that Eason may have hoped the police would

---

[7] This case was tried in September 2013, after the effective date of the new Evidence Code. This language was formerly codified at OCGA § 24-3-50.

8

offer him something more if he confessed did not render the statement inadmissible. *Williams v. State*, 250 Ga. 553, 559 (1) (300 SE2d 301) (1983) (where the hope or fear is the product of defendant's own mind, rather than the result of inducement by others, the statement is admissible).

3. Eason argues that the trial court erred by not allowing his trial counsel to conduct individual voir dire of potential jurors on two panels. But this contention does not accurately reflect what took place in the trial court. Although voir dire was not transcribed,[8] the trial court's instructions to counsel concerning how voir dire would be conducted were recorded and have been made a part of the record on appeal. The trial court explained that general voir dire questions would be posed to all potential jurors, and then counsel would have an opportunity to individually question each potential juror. The trial court requested that counsel pose as many general questions as possible to avoid individual questioning on matters that could be asked of all prospective jurors at the same time, and after the first panel was questioned, the trial court reiterated his instructions to Eason's counsel and gave him examples of the type of questions that could be posed as general questions. Thus, the

---

[8] Eason's trial attorney agreed with the trial court that it was not necessary for the entire voir dire to be taken down, but requested that the court reporter remain on standby to take down any objections that might arise during voir dire.

trial court did not, as Eason contends on appeal, "disallow" his trial counsel the opportunity to individually question some of the potential jurors. Rather, the trial court simply requested that counsel ask as many questions as possible as general questions before moving on to individually questioning prospective jurors.

Moreover, our appellate courts previously have found this procedure permissible. *Walker v. State*, 271 Ga. 328, 329 (2) (519 SE2d 670) (1999) (a trial court is permitted to require that general questions be addressed to the entire panel rather than allowing each juror to be questioned seriatim); *State v. Hutter*, 251 Ga. 615, 616 (307 SE2d 910) (1983) (no error where counsel simply denied opportunity to ask question seriatim to each juror, but instead was required to address the question to the panel as a whole in a way that would ensure an individual response from potential jurors); see also Uniform Superior Court Rule 10.1. Eason has failed to show that the trial court abused its discretion by refusing to allow his counsel to pose each voir dire question individually to potential jurors when the trial court also permitted the parties to individually examine each juror.

4. Lastly, we consider Eason's claims that his trial counsel was ineffective. We start with the well-known standard that applies to this claim.

> To prevail on a claim of ineffective assistance, [an accused] must prove both that the performance of his lawyer was deficient and that [this deficiency] prejudiced [his or her defense]. *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To show that the performance of his lawyer was deficient, [an accused] must prove that his lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also *Kimmelman v. Morrision*, 477 U.S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to show that he was prejudiced by the performance, [an accused] must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694 (III) (B).

*Jones v. State*, 292 Ga. 593, 599 (7) (740 SE2d 147) (2013). Although "[t]his does not require a showing that counsel's actions more likely than not altered the outcome, . . . the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." (Citations and punctuation omitted.) *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012), citing *Harrinton v. Richter*, [562 U.S. 86, 111-112] (IV) (B) (131 SCt 770, 178 LE2d 624) (2011). The

11

burden to prove an ineffectiveness claim, although not impossible to carry, is a heavy one. *Jones*, 292 Ga. at 599 (7).

With these tenets in mind, we turn to Eason's specific claims of ineffectiveness.

(a) Eason argues that his trial counsel was ineffective because he failed to adequately prepare for trial. Eason's trial attorney testified at the motion for new trial hearing that he had been admitted to practice law in 1971, and that since that time he had tried approximately 500 cases. Counsel testified his practice had always consisted of at least half criminal defense work, but in the last 12 to 15 years, criminal defense work had comprised approximately 90 percent of his practice.

Trial counsel testified that he met with Eason between five and ten times before trial, that he received and reviewed the statements of the eyewitnesses and the co-defendants through reciprocal discovery with the State, and that he went over those statements with Eason before trial. He explained that he did not believe it was necessary to interview the witnesses from Waffle House, especially since none of them could identity Eason, although as was his custom he conducted his own investigation and went to the Waffle House so he could get a feel for the scene. Trial counsel testified that Eason told him from the beginning that he was involved in the

12

robbery, and that in his opinion, which he shared with Eason, the State's evidence was "pretty well" overwhelming, and did not leave them with any real defense. He said he explained to Eason his firm belief that Eason's best option was to secure a plea deal from the State and that he practically begged him to take the State's plea deal, but Eason wanted a better deal so he turned down the State's offer.

Although Eason argues on appeal that his counsel should have interviewed the witnesses, hired an investigator, checked to see if the witnesses had a criminal history and subpoenaed any videotapes from the Waffle House, the only effect he points to from these failures is that there is "some probability" that the outcome of the trial would have been different if these steps had been taken. But such a conclusory statement is not sufficient to support a claim that without counsel's alleged shortcomings, there is a *reasonable* probability that the outcome of trial would have been different. This enumeration thus presents no basis for reversal. *Kilby v. State*, 289 Ga. App. 457, 460 (3) (657 SE2d 567) (2008).

(b) Eason also argues that his trial counsel should have questioned Detective Thorp during the *Jackson-Denno* hearing concerning what he told Eason about his possible sentence. Although Eason does not contend that Detective Thorp misinformed him about his sentence, he argues that the trial court "could have made"

13

a different ruling on the admissibility of the statement if the trial court had known that Detective Thorp failed to tell Eason that he was facing the possibility of a life sentence.

Trial counsel testified at the motion for new trial hearing that he listened to the recording of the interview prior to the *Jackson-Denno* hearing and that he did not recall hearing Eason ask Detective Thorp how much time he was potentially facing if he was charged with armed robbery.[9] Further, trial counsel testified that he listened to the recording with a view toward finding something that could be used to show that Eason had been made promises or been given some hope of benefit if he confessed, but that he did not recall hearing anything on the recording which would have provided a basis for such an argument. Accordingly, since counsel was unable to recall anything specific about the exchange in question and could not recall that he heard anything on the tape that he thought would be helpful, we must presume that trial counsel made a strategic decision not to question Detective Thorp concerning his exchange with Eason about possible sentences. See *Brown v. State*, 288 Ga. 902, 908-909 (5) (708 SE2d 294) (2011) ("'strong presumption' that counsel's attention to

---

[9] We again note that the recording was of poor quality and that it was not played at trial for this reason, among others.

14

certain issues to the exclusion of others reflects trial tactics"). And because Eason does nothing more than speculate on appeal that the trial court "could have made" a different determination if trial counsel had brought this exchange to light, he has failed to make the necessary showing that counsel's decision was so "patently unreasonable that no competent attorney would have chosen it." (Citation and punctuation omitted.) *Brown*, 288 Ga. at 909. See *White*, 304 Ga. App. at 160-161 (4).

(c) Eason next argues that his trial counsel rendered ineffective assistance by failing to select a proper jury. The record shows that trial counsel testified at the motion for new trial hearing that he had written down the wrong numbers on the "strike sheet" for panel two, and as a result some of the jurors that ended up serving on the panel were not the ones he selected. Although Eason argues this alone shows that his counsel performed deficiently, he makes absolutely no assertion or showing concerning how he was prejudiced by counsel's mistake. Eason has not attempted to identify which jurors erroneously served on the jury, has not raised even the slightest possibility that the jurors were not qualified, and has not made any showing that any of the jurors who served harbored any prejudice towards him or were disinclined to acquit him based on reasons other than the evidence presented at trial. Accordingly, even assuming deficient performance, reversal is not required because Eason has not

15

affirmatively shown he was prejudiced by counsel's mistake. E.g., *O'Brien v. State*, 242 Ga. App. 344, 346-347 (2) (529 SE2d 657) (2000) (ineffectiveness claim fails where defendant failed to show "flip-flopping" juror's names resulted in prejudice); *Shields v. State*, 307 Ga. App. 830, 834 (706 SE2d 187) (2011) (showing of actual prejudice necessary to find counsel was ineffective based on misunderstanding concerning number of peremptory challenges).

(d) Eason contends that his trial counsel was ineffective because he failed to object to questions and testimony that he contends amounted to an improper comment on his right to remain silent. The comments and questions Eason points to as objectionable occurred during the State's examination of Detective Thorp concerning his interview with Eason. Specifically, Eason contends that his trial counsel should have objected when the prosecuting attorney asked Detective Thorp whether Eason denied if there was a gun present, when he asked Detective Thorp if Eason denied being in the Waffle House, and when he asked Detective Thorp if Eason denied that was the mask he had been wearing.[10]

---

[10] The transcript from the motion for new trial hearing discloses that trial counsel was only asked about his failure to object to the testimony about Eason's failure to deny there was a gun or that he was in the Waffle House. However, we need not differentiate these statements for purposes of our analysis since none of them were objectionable for the reasons set out above.

16

This claim of ineffectiveness is also without merit. Eason was under arrest and had been given *Miranda* warnings when he agreed to speak to the investigator, and there is no contention that he entered the interview with the understanding that he would not answer certain questions or that certain topics were off limits. Further, although Detective Thorp testified at the *Jackson-Denno* hearing that Eason may have failed to answer several questions, he also said that he never refused to answer any questions, never said he wanted to stop the interview, and never indicated he did not want to answer any additional questions without an attorney being present. Accordingly, since Eason did not invoke his right to remain silent during the interview, the testimony regarding failure to respond to particular questions or to interject denials during the interview was admissible. *Curry v. State*, 291 Ga. 446, 451 (3) (729 SE2d 370) (2012) (defendant did not invoke right to remain silent during interview and thus testimony regarding his failure to respond to particular questions was admissible); *Shaburov v. State*, 324 Ga. App. 743, 747 (1) (751 SE2d 540) (2013) ("since [defendant] spoke with police without ever invoking his right to remain silent, the prosecutor's line of questioning . . . did not constitute impermissible commentary on appellant's right to remain silent."). "Because the trial court would not have been required to sustain objections to the testimony and arguments about

17

which Appellant complains, the failure of his lawyer to make such objections does not show that Appellant was denied the effective assistance of counsel." *Yancey v. State*, 292 Ga. 812, 819 (4) (740 SE2d 628) (2013).

(e) Lastly, Eason contends that his trial counsel was ineffective because he failed to properly advise him on recidivist sentencing, and argues that had his counsel given him proper information, he could have a "true opportunity" to knowingly and voluntarily accept or reject the State's plea offer. This contention, however, is belied by the record. Trial counsel testified that after he received notice that the State sought to sentence Eason as a recidivist, he specifically advised Eason that he could be facing a life sentence and that when Eason would not accept the State's plea deal despite the seemingly overwhelming evidence against him, he had Eason brought to court so that the trial judge could explain to Eason that if he was found guilty he would have no other choice but to sentence him to life. After the trial court explained the sentencing, Eason had until 9:00 a.m. the following morning to accept or reject the offer, and counsel testified he met with Eason at 8:30 a.m. to go over the offer again. Although Eason testified at the motion for new trial hearing that he could not recall if trial counsel told him he was facing a mandatory, as opposed to a possible, life sentence, the trial court explained to him that he was facing a mandatory life

18

sentence before he finally rejected the plea offer. Accordingly, Eason has wholly failed to establish that his trial counsel rendered deficient performance in regards to his sentencing or the State's plea offer. And because all of Eason's ineffectiveness claims fail, he is not entitled to a new trial on this basis.

*Judgment affirmed. Phipps, C. J., and Ellington, P. J., concur.*